******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MERIDIAN PARTNERS, LLC *v.* DRAGONE CLASSIC
MOTORCARS, INC., ET AL.
(AC 38085)

DiPentima, C. J., and Keller and Calmar, Js.

*Argued October 18, 2016—officially released March 7, 2017*

(Appeal from Superior Court, judicial district of
Fairfield, Arnold, J.)

*Edward T. Murnane, Jr.,* for the appellants-cross
appellees (defendants).

*Jeffrey Hellman*, for the appellee-cross appellant (plaintiff).

*Opinion*

CALMAR, J. The defendants, Dragone Classic Motorcars, Inc., Dragone Vintage Cars, NV, Inc., and Emanuel Dragone, appeal from the judgment of the trial court denying their motion to vacate a settlement agreement that was entered into between the defendants and the plaintiff, Meridian Partners, LLC. The plaintiff has filed a cross appeal, challenging the denial of its motion for contempt. We affirm the judgment of the trial court.

The following facts and procedural history, as found by the trial court, are relevant to this appeal. By a complaint dated February 14, 2014, the plaintiff alleged that it was in the business of arranging financing for specialized businesses. In August, 2012, the defendants, dealers of antique automobiles, engaged the services of the plaintiff to obtain financing and to perform other services for the defendants. The plaintiff performed services for the defendants; the defendants, however, failed to pay the plaintiff for all of the work performed. The plaintiff, therefore, instituted the present action alleging that the defendants owed the plaintiff $170,000 for the services it had performed for the defendants.

On March 12, 2014, the plaintiff filed an application for a prejudgment remedy. A hearing on this application was scheduled for May 29, 2014. On that date, the parties appeared before the court, *Stodolink, J.*, and stipulated to an agreement of the claims between the parties. The court's order dated May 29, 2014, provided: "The court hereby accepts the following stipulation of the parties as stated on the record: The defendant is to pay the plaintiff $30,000 within twenty-one (21) days of today's date (5/29/2014) in good funds. In exchange the parties agree to mutual releases and the action shall be withdrawn with prejudice. The parties further agree that mutual confidentiality agreements and mutual nondisparagement agreements shall be entered into."

On July 1, 2014, the plaintiff filed a motion to enforce the settlement agreement. In this motion, the plaintiff contended that although it had prepared a settlement agreement reflective of the terms agreed upon in court, the defendants refused to sign the agreement and, instead, insisted upon various new terms that were not included in the stipulated agreement. The plaintiff argued that the defendants insisted that each of the plaintiff's principals and the plaintiff's attorney sign the settlement agreement personally and provide the defendants with the plaintiff's principals' proof of identification. On July 17, 2014, the defendants filed a cross motion to enforce the settlement agreement. In this motion, the defendants requested that the court "enforce the proposed settlement agreement . . . incorporating into it the following requirements . . . (1) the plaintiff's three principals sign the proposed settlement agreement individually; (2) each of the plain-

tiff's three principals individually release the defendants; (3) the plaintiff's three principals provide copies of their driver's licenses; and (4) both [counsel for the plaintiff] and [counsel for the defendants] sign the proposed settlement agreement and agree to be bound by the confidentiality provision of the settlement agreement."

Following a hearing on September 4, 2014, the court, *Arnold, J.*, issued the following order: "The parties shall execute mutual copies of one release form containing the signatures of the three [principal] members of the plaintiff LLC, who shall sign in their capacities as principal members of the plaintiff LLC, as well as, in their individual capacities. The attorneys for the respective parties, by agreement, will also affix their signatures to said release form. At the time of the signing of the release form, the individual parties signing the form whether plaintiffs, defendants or persons authorized to sign for the defendant corporations, shall present to the notary public or duly authorized acknowledging authority, proper legal identification (i.e., valid driver's license). The plaintiff LLC shall also provide a valid tax identification number to the defendants. The parties shall effectuate the exchange of the signed release document and settlement funds within 30 days of today's date. The parties shall file a withdrawal of action form with the clerk of court within 30 days, as well." Neither party appealed from this order.

On October 3, 2014, the defendants filed a motion to vacate the settlement order.[1] In this motion the defendants contended that the parties could not agree on the specific terms of the releases nor on the identities of the parties who should execute the releases. Specifically, the defendants argued that the plaintiff was not in existence in August, 2012, when it alleged that it was engaged by the defendants to obtain commercial financing. The defendants further argued that the three individuals that the plaintiff claimed were principals of the plaintiff were not listed as principals of the LLC in the records of the Connecticut Secretary of State. Instead, two other limited liability companies were listed as principals of the plaintiff and the principals in the other limited liability companies did not include an individual named Michael Petralia (also known as Michael Petraglia), the individual that the defendants had dealt with concerning the underlying transaction. The defendants argued that they had been unable to verify the actual identity of that individual and that without knowing the actual identities of the principals of the plaintiff, they had no way of protecting themselves from future litigation concerning these claims.

On October 7, 2014, the plaintiff filed an objection to the defendants' motion to vacate, arguing that it had complied with all of the terms of the September 4, 2014, order but the defendants had failed to do so. The

plaintiff also filed a motion for contempt in which it argued that the defendants' refusal to make the required payment and to sign the required documents constituted wilful contempt of the court's September 4, 2014 order. On November 3, 2014, the court denied the defendants' motion to vacate the settlement order.[2] The court also ordered the defendants to comply with the September 4, 2014 order within ten days and indicated that if the defendants did not comply, the court would consider whether they should be held in contempt at a hearing scheduled for November 17, 2014. Following a hearing on the motion for contempt on November 17, 2014, the court continued the matter to December 1, 2014, for payment of the settlement funds and the signing of the settlement agreement and releases.[3]

On December 1, 2014, prior to the hearing before the court, the defendants filed a second motion to vacate the settlement order. In addition to the grounds raised in their first motion to vacate, the defendants argued that the plaintiff did not comply with the court's order to provide a valid tax identification number to the defendants, but, rather, had provided the tax identification number for a different entity. The defendants also argued that the plaintiff had made false, libelous and actionable statements about the defendants in direct contravention of the nondisparagement clause of the proposed settlement agreement. On December 1, 2014, the court rejected the defendants' arguments and claims regarding the plaintiff's tax identification number and, thereafter, ordered the parties to submit briefs on all remaining issues.

By a memorandum of decision dated May 29, 2015, the court denied the plaintiff's motion for contempt, finding that the defendants were not in contempt of the various orders of the court concerning the settlement agreement entered into on May 29, 2014. The court also denied the defendants' second motion to vacate the settlement order, finding that the terms of the May 29, 2014 settlement agreement were clear and unambiguous and should be enforced, despite any disagreement regarding the contents of the release and settlement agreement form.

The defendants appeal from the judgment of the court denying their motion to vacate the settlement order and the plaintiff cross appeals from the denial of its motion for contempt. Additional facts will be set forth as necessary.[4]

I

The defendants argue on appeal that the court erred in concluding that the parties had reached a clear and unambiguous settlement agreement capable of being enforced by the court. According to the defendants, the agreement originally placed on the record was essentially an outline, with the mutual releases, confidential-

ity agreement and nondisparagement agreement still to be drafted, reviewed, assented to by the parties, and executed. Further, the defendants contend that there was no agreement regarding the identity of the actual parties to be bound by the proposed contract. Finally, the defendants argue that any failure of the parties to perfect the settlement was the result of the plaintiff's bad faith.[5] The plaintiff counters that the court properly enforced the settlement agreement that the parties placed on the record in court.

Before considering the merits of the defendants' claims, we must address the procedural posture of this case. Specifically, we note that the defendants did not appeal from the court's September 4, 2014 settlement order. On October 3, 2014, the defendants filed their first motion to vacate the settlement order, which the court denied on November 3, 2014. The defendants did not appeal from the denial of this motion to vacate. On December 1, 2014, the defendants filed their second motion to vacate, which argued, in addition to the grounds raised in the first motion to vacate, that the plaintiff had failed to comply with the court's September 4, 2014 order to provide a valid tax identification number to the defendants and had also engaged in actionable misconduct. The court denied the second motion to vacate in its memorandum of decision on May 29, 2015. The defendants then filed the present appeal from the denial of the second motion to vacate the settlement order. Although captioned as a motion to vacate the settlement order, the court appears to have treated the second motion to vacate as a motion to reargue enforcement of the settlement order, as it considered the merits of the defendants' claims regarding the enforcement of the settlement order. See *Torres* v. *Carrese*, 149 Conn. App. 596, 613, 90 A.3d 256 ("[c]ourts analyze pleadings for what they are, rather than what their titles state they are"), cert. denied, 312 Conn. 912, 93 A.3d 595 (2014). For purposes of this appeal, therefore, we will treat the defendants' second motion to vacate the settlement order as a motion to reargue the enforcement of the settlement order.[6]

"The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . .

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant]

claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 843, 59 A.3d 247, cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013) (appeal withdrawn November 26, 2014).

With regard to settlement agreements, we begin by noting that "[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." (Citations omitted; internal quotation marks omitted.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993).

"The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Santos* v. *Massad-Zion Motor Sales Co.*, 160 Conn. App. 12, 18, 123 A.3d 883, cert. denied, 319 Conn. 959, 125 A.3d 1013 (2015). "The test of disputation . . . must be applied to the parties at the time they entered into the alleged settlement. To hold otherwise would prevent any motion to enforce a settlement from ever being granted." (Internal quotation marks omitted.) *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 67, 978 A.2d 531 (2009). Finally, in a contract between commercial parties, there is a presumption that the language is unambiguous. See *Orange Palladium, LLC* v. *Readey*, 144 Conn. App. 283, 294, 72 A.3d 1191 (2013).

"By contrast, [i]f the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) Id., 291–92.

The defendants argue that after the stipulated

agreement was entered on the record, the mutual releases, confidentiality agreement, and nondisparagement agreement all still needed to be drafted, reviewed, assented to, and executed. According to the defendants, during the course of preparing these papers, the parties reached an impasse over the identities of the principals of the plaintiff and its various affiliates, and never concluded a mutually agreeable contract.[7] In support of their argument that the agreement was not clear and unambiguous, the defendants rely on *WiFiLand, LLP* v. *Hudson*, 153 Conn. App. 87, 100 A.3d 450 (2014), and *Santos* v. *Massad-Zion Motor Sales Co.*, supra, 160 Conn. App. 12. We conclude, however, that these cases are distinguishable from the present matter.

In *WiFiLand, LLP* v. *Hudson*, supra, 153 Conn. App. 90–93, the plaintiff, an Internet provider, and the defendants, operators of a recreational vehicle park, entered into settlement negotiations to resolve the pending matters between the parties. Pursuant to the settlement agreement, the plaintiff agreed to accept the offer of settlement in exchange for an undisclosed dollar amount, subject to the plaintiff's approval of a confidentiality provision drafted by the defendants. Id., 104. After the plaintiff rejected the defendants' draft settlement agreement that included a confidentiality provision, the defendants filed a motion to enforce the settlement agreement. Id., 105. The trial court denied the motion to enforce, concluding that "the confidentiality provision was an essential component of the settlement agreement and that the plaintiff never approved the confidentiality provision drafted by the defendants. The court further found that the plaintiff reserved the right to reject the confidentiality provision and that the plaintiff did not obligate itself to respond with specifics as to how the confidentiality provision must be amended to satisfy the plaintiff." Id., 106–107. We, therefore, affirmed the trial court's decision to deny the motion to enforce the settlement agreement. Id., 107.

Similarly, in *Santos* v. *Massad-Zion Motor Sales Co.*, supra, 160 Conn. App. 14, following settlement negotiations, the parties reached an agreement as to the amount to be paid by the defendants' insurer, an amount to be paid by the defendants themselves and how the amount was to be divided between attorney's fees and damages. They also agreed to include a mutual nondisparagement and nondisclosure provision. Id. The parties represented to the court that all that remained was for the defendants' lawyer to draft a confidentiality provision and submit it to the plaintiff's lawyer for her review. Id. The plaintiff subsequently filed a motion to enforce the settlement agreement. The defendant objected on the ground that the plaintiff had breached confidentiality—a term of the settlement agreement— before the specific terms could be agreed upon, and, as such, the settlement agreement was unenforceable. Id. Following an evidentiary hearing, the court con-

cluded that the parties had reached a clear and enforceable settlement agreement; the court, therefore, granted the plaintiff's motion to enforce the settlement agreement. Id., 16–17. On appeal, we reversed the judgment of the trial court, stating: "We agree with the defendants that the settlement agreement was not clear and unambiguous and consequently was unenforceable. Although the parties allow that the settlement agreement was to contain a confidentiality provision, and that the provision needed to be 'draft[ed]' and 'review[ed],' the agreement itself was not clear and unambiguous because the agreement's terms were incomplete, and, thus, not certain, nor did the terms '[convey] a definite and precise intent.' . . . Further, the language of the agreement, as stated on the record, was open to more than one reasonable interpretation." (Citation omitted.) Id., 18–19.

*WiFiLand, LLP*, and *Santos* are distinguishable from the present case in that the confidentiality provision in those cases was an essential term of the settlement agreement and the parties never agreed to the terms of that provision. In the present case, there was no dispute about the settlement agreement or its terms. The court stated in its memorandum of decision that the basic terms of the settlement agreement, as recited in court, were undisputed. In fact, both parties filed motions to enforce the settlement agreement that was entered into in court. The defendants' cross motion to enforce the settlement agreement detailed the parties' negotiation of the settlement via e-mail communications. This motion and the attached documents indicate that the only disagreement between the parties involved the plaintiff and its principals providing proof of identity to the defendants.[8] The defendants' motion specifically requested that the court enforce the settlement agreement and incorporate the following terms: "(1) the plaintiff's three principals sign the proposed settlement agreement individually; (2) each of the plaintiff's three principals individually release the defendants; (3) the plaintiff's three principals provide copies of their driver's licenses; and (4) both [counsel for the plaintiff] and [counsel for the defendants] sign the proposed settlement agreement and agree to be bound by the confidentiality provision of the settlement agreement." The court's September 4, 2014 order enforcing the settlement agreement incorporated these requests.

In their reply brief, the defendants argue that, in their cross motion to enforce the settlement agreement, their prior counsel was seeking to have the court insert terms into the settlement papers to which the plaintiff did not agree and explicitly objected to in its motion to enforce. According to the defendants, this amounts to impermissible judicial intervention into the parties' negotiating process. The court, however, was doing what the defendants asked it to do in their cross motion to enforce the settlement agreement. A party cannot complain of

an error that it encouraged the court to make. See *Pace* v. *Pace*, 134 Conn. App. 212, 221, 39 A.3d 756 (2012).

In light of the fact that both parties sought to enforce the settlement agreement that was entered into in court, we agree with the trial court's conclusion that the settlement agreement was unambiguous and complete. See *Massey* v. *Branford*, 118 Conn. App. 491, 499, 985 A.2d 335 (2009) (settlement agreement unambiguous and complete on its face not made ambiguous by absence of provision for releases or absence of a merger clause), cert. denied, 295 Conn. 913, 990 A.2d 345 (2010). As stated previously in this opinion, "[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audobon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811. As noted by the trial court in its memorandum of decision, "[t]he parties have been in dispute about the form, wording and exchange of information prior to the signing of the release, but the basic terms of the settlement agreement as recited on the record are not disputed."

Finally, with regard to the defendants' claim that the plaintiff and its principals had made disparaging and libelous statements about the defendants, in violation of the nondisparagement provision of the settlement agreement, the court stated that "the defendants have submitted insufficient proof regarding these allegations. The court has reviewed the sworn affidavit of Emanuel Dragone, a party defendant. The affidavit is replete with hearsay statements, and the court, for the purposes of these proceedings, finds it lacks credibility, noting the self-interest the affiant has in the outcome of these proceedings." We cannot say that this factual finding is clearly erroneous. See *Orange Palladium, LLC* v. *Readey*, supra, 144 Conn. App. 291–92.

On the basis of the foregoing, we cannot conclude that the court abused its discretion in denying the defendants' second motion to vacate the settlement agreement.

II

In its cross appeal, the plaintiff argues that the court abused its discretion in denying its motion for contempt. According to the plaintiff, the court should have granted its motion for contempt because the defendants admitted that they had wilfully disobeyed the court's order.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court

order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) *Przekopski* v. *Zoning Board of Appeals*, 131 Conn. App. 178, 191, 26 A.3d 657, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011). "[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such a violation was wilful." (Internal quotation marks omitted.) Id., 192.

The plaintiff's motion for contempt indicated that although it had complied with the terms of the court's September 4, 2014 order, the defendants had refused to make the required payment and sign the required documents, in wilful contempt of the court's order. On appeal, the plaintiff argues that the only basis for the defendants' failure to comply with the court's order was their dissatisfaction with the forms of identification presented by the plaintiff's principals and their unfounded belief that the plaintiff had defamed Emanuel Dragone. In support of this argument, the defendants refer to deposition testimony of Dragone. We disagree with the plaintiff.

The court's September 4, 2014 order provided that the plaintiff was to provide a valid tax identification number to the defendants. In its memorandum of decision denying the motion for contempt, the court stated: "The plaintiff concedes that it did not provide the defendants with a correct valid tax identification number until November 28, 2014. The plaintiff [admits] that [it] initially submitted an erroneous tax identification number when [it] attempted to comply with the court's order requiring the disclosure of this information. The plaintiff concedes that its delay in providing this required information may excuse any claim the defendant[s] [were] in contempt until after November 28, 2014, and the court agrees. The actions of the defendants in refusing to sign a release and pay the agreed upon sum of $30,000 without a valid tax identification number from the plaintiff were not wilful. The defendants had the right to demonstrate that their failure to comply with the order of the court was excusable, and the defendants have done so."[9]

On the basis of our review of the record, we conclude that the court did not abuse its discretion in denying the plaintiff's motion for contempt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The motion appears to challenge the order entered on May 29, 2014, and the order entered on September 4, 2014.

[2] The defendants did not appeal from the denial of this motion.

[3] The November 17, 2014 order provides: "Matter is continued to December

1, 2014 for the signing of the settlement agreement, releases and the defendant's payment of $30,000 to the plaintiffs in accordance with the stipulation entered before Judge Stodolink. In the event the aforesaid documents are not signed by the defendant and the defendant has not paid the plaintiffs the sum of $30,000 the court will make a determination as to whether the defendant is in contempt of the court's (*Arnold, J.*) previous orders. A finding of contempt can include monetary penalties to be assessed against the defendant and can include an award of an attorney's fee to the plaintiffs."

[4] We note that the court's memorandum of decision and the briefs of the parties refer to multiple hearings in this matter. The only transcript that was provided to this court, however, was the transcript of the May 29, 2014 hearing before Judge Stodolink.

[5] With regard to this claim, the defendants argue that the plaintiff "breached the implied covenant of good faith and fair dealing by such acts as (1) refusing to provide basic identification for the alleged principals of the plaintiff LLC; (2) falsely representing the tax identification number of another LLC as the tax identification number of the plaintiff LLC; and (3) making disparaging comments about the defendants after the settlement stipulation had been reached, in an obvious anticipatory repudiation of the settlement agreement, which denies the defendants the full benefit of the bargain." Our discussion of these claims is incorporated in our discussion of the other issues raised in the defendants' appeal and the plaintiff's cross appeal.

[6] We recognize that the defendants raised additional grounds in the second motion and that ordinarily "[r]aising an issue for the first time in a motion to reargue will not preserve that issue for appellate review." *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 634, 99 A.3d 1079 (2014). In the present case, however, after the court rejected the defendants' arguments regarding the plaintiff's tax identification number, it ordered the parties to submit briefs on all remaining issues. The parties proceeded to brief the merits of the defendants' claims concerning whether to vacate the settlement order, including the remaining claim raised in the second motion to vacate. The plaintiff did not argue, in its opposition to the second motion to vacate or its memorandum of law, that the issues raised in the second motion should not be reviewed. Following submission of briefs, the court issued a lengthy memorandum of decision in which it considered the merits of the arguments raised in the initial and second motions to vacate. Under the circumstances of this case, we will review all of the issues considered by the court in its May 29, 2015 memorandum of decision.

[7] The defendants refer to the following statements by the plaintiff's counsel at the time the stipulation was put on the record on May 29, 2014, to show that the settlement stipulation was incomplete:

"[Counsel for the plaintiff]: Okay. The terms of the settlement are that the defendants will pay to the plaintiffs the sum of $30,000 within twenty-one days of today in good funds and that the parties will exchange mutual general releases that will bind the parties *and all of their various affiliates* and that the—upon the payment the action will be withdrawn with prejudice and that there will be also mutual confidentiality and nondisparagement agreements amongst the principle—amongst the parties as well, Your Honor.

\* \* \*

"I would anticipate that we will prepare a settlement agreement that will embody these terms . . . but that's not something we need to trouble the court with." (Emphasis added.)

[8] With regard to the defendants' concerns about the identities of the plaintiff's principals and the plaintiff's business structure, the court stated: "The defendants have made many allegations regarding the plaintiff and its principals, but much of that information was known to the defendants during the initial proceedings at the time they agreed to settle the matter, which was prior to the commencement of a prejudgment remedy hearing. . . . The defendants now raise these concerns and want the court to, in essence, confirm their substance and/or validity by vacating the settlement agreement. That is beyond the scope of the court in a proceeding to determine whether or not to enforce a settlement agreement. . . . If the defendants wished to present the claims they now advance, they should have presented these claims to the trier of fact, prior to entering into the settlement agreement."

[9] According to the defendants, the plaintiff's failure to provide the defendants with the plaintiff's tax identification number demonstrated bad faith on the part of the plaintiff. We note, however, that the court made no such finding.