******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KEYIN WORTH *v.* CHRISTOPHER J.
PICARD ET AL.
(AC 46144)

Moll, Cradle and Clark, Js.*

*Syllabus*

The plaintiff appealed from the judgment of the trial court dismissing her action against the defendants for damages arising from her ejection from a residence during the enforcement of a summary process execution for possession. During the pendency of the appeal, the parties entered into a settlement agreement, and the trial court granted the defendants' motions to enforce the agreement, from which the plaintiff filed an amended appeal. She claimed, inter alia, that the court improperly granted the defendants' motions because the draft settlement documents the defendants submitted to her did not reflect material aspects of the parties' agreement. *Held*:

The trial court properly granted the defendants' motions to enforce the settlement agreement, as any dispute as to purported deficiencies in the draft settlement documents was immaterial to the formation of the settlement agreement, and, thus, this court affirmed the judgment of the trial court dismissing the plaintiff's action.

Argued February 11—officially released June 3, 2025

*Procedural History*

Action to recover damages for, inter alia, conversion, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *D'Andrea, J.*, granted the motion to dismiss filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court; thereafter, the court, *Cordani, J.*, granted the defendants' motions to enforce a settlement agreement, and the plaintiff filed an amended appeal. *Affirmed.*

*Keyin Worth*, self-represented, the appellant (plaintiff).

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Benjamin T. Staskiewicz*, for the appellees (named defendant et al.).

*Peter T. Fay*, for the appellee (defendant AllPoints Realty, Inc.).

*David S. Doyle*, for the appellee (Mortgage Contracting Services, LLC).

*Opinion*

PER CURIAM. The dispositive issue in this appeal filed by the self-represented plaintiff, Keyin Worth, is whether the trial court, following an *Audubon* hearing,[1] properly granted motions to enforce a settlement agreement filed by the defendants, Christopher J. Picard, AllPoints Realty, Inc. (AllPoints), Mortgage Contracting Services, LLC (MCS), Silver and Oak Realty CT, LLC (Silver and Oak), Jonathan Gineo, and Michael Garcarz.[2] We conclude that the trial court properly granted the motions to enforce the settlement agreement and, therefore, affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of this appeal. In 2018, the plaintiff commenced an action against Picard, Edward DiLieto, and

[1] "An *Audubon* hearing is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." (Internal quotation marks omitted.) *307 White Street Realty, LLC* v. *Beaver Brook Group, LLC*, 216 Conn. App. 750, 757 n.5, 286 A.3d 467 (2022); see also *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811–12, 626 A.2d 729 (1993).

[2] The plaintiff also named as defendants in the present action (1) Gail Caroll, in her capacity as the fiduciary of the estate of Laura G. Urban, against whom the plaintiff subsequently withdrew the present action, and (2) four nonappearing Doe defendants. In the interest of simplicity, we refer to Picard, AllPoints, MCS, Silver and Oak, Gineo, and Garcarz individually by name and collectively as the defendants.

Willie Davis, Jr.[3] See *Worth* v. *Picard*, Superior Court, judicial district of Waterbury, Docket No. CV-18-5021726-S (2018 action).[4] The plaintiff asserted various claims predicated on allegations that, on or around March 27, 2018, during the enforcement of a summary process execution for possession that resulted in her ejection from a Wolcott property at which she resided,[5] some of her personal possessions were misappropriated.

Meanwhile, in June, 2021, while the proceedings in the 2018 action were ongoing, the plaintiff commenced the present action. In her revised first amended verified complaint dated October 24, 2021, the plaintiff asserted various claims predicated on allegations that some of her personal possessions were misappropriated in connection with her eviction from the Wolcott property. On December 30, 2021, Picard, Silver and Oak, Gineo, and Garcarz filed an amended motion to dismiss the present action,[6] inter alia, on the basis of the prior pending action doctrine. On January 5, 2022, the plaintiff filed a memorandum of law in opposition to the

---

[3] The plaintiff named Picard, who is a member of the bar of this state, as a defendant in the 2018 action "as attorney and as individual." (Internal quotation marks omitted.) *Worth* v. *Picard*, 218 Conn. App. 549, 550 n.2, 292 A.3d 754 (2023). Additionally, the plaintiff named DiLieto and Davis, Jr., both of whom are state marshals, as defendants in the 2018 action in their respective individual and official capacities. Id. In the interest of simplicity, we do not distinguish between these various capacities when referring to these individuals.

[4] The plaintiff also named as defendants in the 2018 action (1) Edmar Services, LLC, against which the plaintiff subsequently withdrew the 2018 action, and (2) nonappearing entities identified only as "Trucking and Moving Providers."

[5] In 2016, nonparty Bank of New York Mellon, formerly known as the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OH1, Mortgage Pass-Through Certificates, Series 2007-OH1, commenced a summary process action against the plaintiff with respect to the Wolcott property. On May 19, 2017, the trial court, *Avallone, J.*, rendered a judgment of possession against the plaintiff, and, on March 15, 2018, a summary process execution for possession was issued.

[6] On June 23, 2021, Picard, alone, filed a motion to dismiss the present action, which motion was later amended on September 8, 2021.

amended motion to dismiss. On December 16, 2022, the trial court, *D'Andrea, J.*, granted the amended motion to dismiss pursuant to the prior pending action doctrine, dismissing the present action in its entirety.[7] On January 4, 2023, the plaintiff filed this appeal.[8]

---

[7] Additionally, the moving defendants requested a prohibitory order preventing the plaintiff from commencing any new actions associated with the Wolcott property or any alleged losses from the disposition of her personal belongings in connection with her eviction from the Wolcott property. In granting the amended motion to dismiss, the court entered the following order: "The plaintiff . . . is precluded from filing any new actions against the defendants. Should the plaintiff attempt to file any new actions, all proposed filings will be reviewed by this court. If the court, after review, deems the filings to contain frivolous allegations or should they obviously fail to state claims upon which relief can be granted, or they contain allegations similar to the allegations contained in this case and previous case so that they are in effect adjudicating the same underlying rights, any proposed actions will be rejected by the clerk's office at the direction of the court and returned to the plaintiff. The court will not open a file as an official record within the Judicial Branch as it has been done in the past without this review. In the event that the proposed filing is not one as described above and states a claim upon which relief may be granted, the court will process the filings in the usual manner."

In her principal appellate brief, the plaintiff makes a brief reference to the court's "filing injunction" with no accompanying substantive legal analysis challenging its propriety. Thus, insofar as the plaintiff attempts to raise a claim of error as to the court's prohibitory order, we deem any such claim to be abandoned as inadequately briefed. See *Long Manor Owners' Assn., Inc.* v. *Alungbe*, 218 Conn. App. 415, 422–23, 292 A.3d 85 ("Both this court and our Supreme Court repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . In addition, although we acknowledge that self-represented litigants are afforded some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citations omitted; internal quotation marks omitted.)), cert. denied, 348 Conn. 909, 303 A.3d 10 (2023); see also *Worth* v. *Picard*, 218 Conn. App. 549, 551 n.3, 292 A.3d 754 (2023).

[8] On December 28, 2022, the plaintiff filed a motion to reargue/reconsider the judgment of dismissal, which the court summarily denied thereafter.

In connection with this appeal, appellate preargument conferences (PACs) were held by the Honorable Richard N. Palmer on April 13, May 23 and June 14, 2023. On October 13, 2023, DiLieto and Davis, Jr. (marshal defendants) filed in the 2018 action a motion to enforce an alleged settlement agreement that had been reached during the course of the PACs and requested that the court conduct an *Audubon* hearing. On November 3, 2023, AllPoints filed in the present action a motion to enforce the alleged settlement agreement, which MCS adopted in its own motion on November 14, 2023. On November 27, 2023, Picard, Silver and Oak, Gineo, and Garcarz filed a separate motion to enforce the alleged settlement agreement. The plaintiff filed objections to these motions to enforce.

On January 26, 2024, the court, *Cordani, J.*, held an *Audubon* hearing encompassing the motions to enforce the settlement agreement filed in both the present action and the 2018 action. The hearing was attended by respective counsel for (1) the marshal defendants, (2) MCS, (3) AllPoints, and (4) Picard, Garcarz, Gineo, and Silver and Oak. The plaintiff did not attend the hearing; nevertheless, the court decided to "proceed in her absence, finding that she's apparently intentionally waived the right to participate in the hearing."[9] Several exhibits, including email correspondence, were admitted into the record, and the court heard testimony from (1) Attorney Joseph B. Burns, the marshal defendants' counsel, and (2) Attorney Peter T. Fay, AllPoints' counsel.

On February 7, 2024, the court issued a memorandum of decision granting the defendants' motions to enforce

[9] On January 25, 2024, the plaintiff filed a notice indicating that she would not participate in the *Audubon* hearing in light of this pending appeal, as well as an amended appeal that she intended to file. Notwithstanding the plaintiff's failure to attend the hearing, the court stated in its decision granting the defendants' motions to enforce the settlement agreement that it had considered the plaintiff's written objections to the motions.

the settlement agreement.[10] The court made the following factual findings. Although they were not parties to the present action, the marshal defendants were invited to attend the May 23 and June 14, 2023 PACs to determine "whether a global resolution could be achieved because the [2018 action and the present action] were closely related." At the June 14, 2023 PAC, the plaintiff, the defendants, and the marshal defendants agreed to "a full and final settlement agreement," pursuant to which (1) the defendants and the marshal defendants, collectively, would pay the plaintiff a total of $168,000, (2) the plaintiff would execute a full and final general release in favor of (a) the defendants, including their (i) attorneys and law firms and (ii) insurers, (b) the marshal defendants, including their (i) attorneys and law firms and (ii) insurers, and (c) the Bank of New York (BNY),[11] including its affiliates, subsidiaries, predecessors, and successors,[12] (3) the defendants and the

---

[10] The court simultaneously granted the marshal defendants' motion to enforce the settlement agreement, which is not at issue in this appeal. See footnote 17 of this opinion.

Additionally, we note that the court's decision, as well as the trial court case detail, appear to indicate that the court granted only AllPoints' motion to enforce the settlement agreement, with no accompanying grants of the separate motions filed by (1) MCS (which had adopted AllPoints' motion) and (2) Picard, Garcarz, Gineo, and Silver and Oak. The court stated, however, that its decision "applie[d] to the defendants' motions to enforce a settlement agreement in both [the 2018 action and the present action] . . . ." We interpret the court's decision to have granted all of the respective motions to enforce the settlement agreement filed by the defendants in the present action.

[11] This entity's full name is the Bank of New York Mellon, formerly known as the Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OH1, Mortgage Pass-Through Certificates, Series 2007-OH1. See footnote 5 of this opinion.

[12] The court further found that the settlement agreement "provided for a standard general release from the plaintiff to the specified parties as follows: 'The plaintiff hereby forever releases each defendant in the 2018 [action] and in the [present action], the attorneys and law firms representing each of the foregoing defendants in the foregoing litigations, each insurance company insuring the foregoing defendants and/or attorneys, and [BNY], its affiliates, subsidiaries, predecessors, and successors from all claims,

marshal defendants would execute a full and final general release in favor of the plaintiff,[13] and (4) the terms of the settlement would be confidential.[14] Following the June 14, 2023 PAC, "the parties went away to document the foregoing agreement. The terms of the agreement were simple, clear and unambiguous. All parties understood the simple, unambiguous terms of the settlement agreement. The settlement agreement was also consistent with the situation that the parties found themselves in and represented a reasonable and standard resolution to the situation." As the court further determined, "[t]he settlement agreement was voluntarily and knowingly reached by the parties at the [June 14, 2023] PAC. There was a meeting of the minds of all parties that a full and final settlement agreement on the terms found by the court was reached. The settlement agreement was completely made in the presence of [Justice Palmer] during a PAC wherein the very purpose of the PAC was to strive for a settlement. Accordingly, the settlement agreement was made directly and completely within the confines of the court processes and in the presence of Justice Palmer." The defendants and the marshal defendants drafted and submitted proposed releases to the plaintiff;

causes of action, damages, and demands that the plaintiff had, whether known or unknown, as of June 14, 2023, including without limitation all claims and causes of action asserted in the 2018 [action] and the [present action].' "

[13] The court further found that the settlement agreement "provided for a standard general release from the defendants [and the marshal defendants] to the plaintiff as follows: 'Each defendant in the 2018 [action] and in the [present action] forever releases the plaintiff from all claims, causes of action, damages, and demands that each such defendant had, whether known or unknown, as of June 14, 2023, including without limitation all claims and causes of action arising out of the 2018 [action] and the [present action].' "

[14] The court further found that (1) a "potential settlement agreement" had been reached during the May 23, 2023 PAC, pursuant to which the plaintiff would have been paid a total of $120,000, but a dispute arose as to whether the plaintiff would execute a general release in favor of BNY, and (2) "the payment was specifically increased [from $120,000 to $168,000 in the full and final settlement agreement] as further compensation for the inclusion of [BNY] and its related parties in the release."

however, upon receipt of the proposed releases, the plaintiff refused to proceed with the settlement.

Following the *Audubon* hearing, "the court [was] convinced that the parties voluntarily and knowingly agreed to a definitive settlement of the 2018 [action] and the [present action] on the terms specified by the court in its factual findings, namely, a total aggregate payment of $168,000, the exchange of general releases as specified in the [court's] findings of fact, and confidentiality. The terms of the settlement were definitive, simple, clear, and unambiguous. [The motions to enforce raised matters] in equity and ask[ed] that the court use its equitable powers to enforce a settlement agreement reached in a mediation of this ongoing litigation. . . . Enforcing a settlement such as this [would preserve] the integrity of the litigation process, as well as the use of settlements as a meaningful and predictable way of settling litigation. When parties settle a litigation, they are in effect contracting for the right to avoid trial. . . . Accordingly, the court will enforce the settlement agreement reached." (Citations omitted.) The court ordered (1) the settlement agreement to be consummated per the terms found by the court and (2) the plaintiff to withdraw the 2018 action and the present action within thirty days.[15] On February 13, 2024, the plaintiff filed a motion to reconsider, which the court denied on February 20, 2024. On March 1, 2024, the plaintiff amended this appeal to encompass, inter alia,

---

[15] The court further ordered that "[t]he plaintiff must also withdraw any other litigation or claims wherein the claims are released by the general release contained within the settlement agreement."

Additionally, on April 10, 2024, in response to a motion for articulation filed by the plaintiff, the court issued an articulation stating in relevant part that "nothing in the court's decision comments upon or impacts the plaintiff's ability to make reports to the Connecticut Grievance Committee. Further, nothing in the settlement agreement reached between the parties inhibits the plaintiff's ability to file grievances."

the February 7, 2024 decision.[16] Additional facts and procedural history will be set forth as necessary.[17]

The plaintiff raises several claims of error, including that the court improperly granted the defendants' motions to enforce the settlement agreement. For the reasons that follow, we conclude that the court properly granted the defendants' motions to enforce the settlement agreement,[18] which conclusion is dispositive of

---

[16] In January, 2024, the plaintiff filed two additional amended appeals, which indicated that she was challenging various decisions issued prior to the February 7, 2024 decision.

Additionally, on March 4, 2024, the plaintiff filed a motion to vacate and to set aside the February 7, 2024 decision, which the court summarily denied on March 18, 2024. On April 2, 2024, the plaintiff amended this appeal to encompass the court's denial of her motion to vacate and to set aside. Although the plaintiff acknowledges this fourth amended appeal in her supplemental appellate brief filed, with permission from this court, on June 3, 2024, as well as in her reply brief filed on October 1, 2024, she raises no cognizable claim of error as to the denial of her motion to vacate and to set aside, thereby abandoning any such claim. See *New Milford* v. *Standard Demolition Services, Inc.*, 212 Conn. App. 30, 34 n.1, 274 A.3d 911 (claims of error not briefed on appeal are deemed abandoned), cert. denied, 345 Conn. 908, 283 A.3d 506 (2022).

[17] On January 26, 2024, the plaintiff filed an appeal in the 2018 action, which she later amended to encompass the court's grant of the marshal defendants' motion to enforce the settlement agreement. On March 27, 2024, this court dismissed the original appeal filed in the 2018 action for lack of a final judgment and consolidated the amended appeal filed in the 2018 action with this appeal. On April 8, 2024, the plaintiff withdrew the amended appeal filed in the 2018 action. Thus, the plaintiff is not pursuing any claim of error in this appeal with regard to any decision in the 2018 action.

[18] In its appellate brief, AllPoints argues that this appeal is moot as to the grant of the defendants' motions to enforce the settlement agreement because the plaintiff withdrew her appeal from the simultaneous grant of the marshal defendants' motion to enforce the settlement agreement in the 2018 action; see footnote 17 of this opinion; such that, "even if the plaintiff were to prevail on this issue in the present action, the . . . decision in the [2018 action] remains in effect." See *Bongiorno* v. *J & G Realty, LLC*, 211 Conn. App. 311, 322, 272 A.3d 700 (2022) ("Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . A determination regarding . . . [this court's] subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting

this appeal.[19]

We begin by setting forth the following applicable legal principles and standard of review. "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. . . . Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. . . . Nevertheless, the right to enforce summarily a settlement agreement is not unbounded. The key element with regard to the settlement agreement in [*Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 812, 626 A.2d 729 (1993) (*Audubon*)] . . . [was] that there [was] no

of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.)); see also id., 320–21 ("[o]nce the question of the court's subject matter jurisdiction is raised, it must be resolved before the court addresses the merits of the plaintiff's claims" (internal quotation marks omitted)). AllPoints, however, is not a party to the 2018 action, and, thus, if the plaintiff were to prevail in this appeal, AllPoints would have no standing to seek to enforce the decision granting the marshal defendants' motion to enforce the settlement agreement in the 2018 action. See, e.g., *In re Leeanna B.*, 142 Conn. App. 60, 66, 62 A.3d 1135 (2013) (nonparty lacked standing to file motion for contempt). As such, we reject AllPoints' mootness argument. Moreover, to the extent AllPoints claims that the decision in the 2018 action has a preclusive effect in this action, it has failed to brief adequately that issue.

[19] Additionally, the plaintiff raises claims challenging various decisions that preceded and are unrelated to the grant of the defendants' motions to enforce the settlement agreement. In light of our conclusion that the court properly granted the defendants' motions to enforce the settlement agreement, it is unnecessary to address these additional claims.

factual dispute as to the terms of the accord. Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. . . . The rule of *Audubon* effects a delicate balance between concerns of judicial economy on the one hand and a party's constitutional rights to a jury and to a trial on the other hand. . . . To use the *Audubon* power outside of its proper context is to deny a party these fundamental rights and would work a manifest injustice. . . .

"A settlement agreement is a contract among the parties. . . . In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties . . . . The mutual understanding must manifest itself by a mutual assent between the parties. . . . In other words, [i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . Meeting of the minds is defined as mutual agreement and assent of two parties to contract to substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent of mutual assent or mutual obligation. . . . This definition refers to fundamental misunderstandings between the parties as to what are the essential elements or subjects of the contract. It refers to the terms of the contract, not to the power of one party to execute a contract as the agent of another. . . .

"A contract is not made so long as, in the contemplation of the parties, something remains to be done to

establish the contractual relation. The law does not . . . regard an arrangement as completed which the parties regard as incomplete. . . . In construing the agreement . . . the decisive question is the intent of the parties as expressed. . . . The intention is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish. . . . Furthermore, [p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated. . . .

"Finally, [t]he fact that parties engage in further negotiations to clarify the essential terms of their mutual undertakings does not establish the time at which their undertakings ripen into an enforceable agreement . . . [and we are aware of no authority] that assigns so draconian a consequence to a continuing dialogue between parties that have agreed to work together. We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached. . . . More important . . . [when] the general terms on which the parties indisputably had agreed . . . included all the terms that were essential to an enforceable agreement . . . [u]nder the modern law of contract . . . the parties . . . may reach a binding agreement even if some of the terms of that agreement are still indefinite." (Footnote omitted; internal quotation marks omitted.) *Edgewood Properties, LLC* v. *Dynamic Multimedia, LLC*, 226 Conn. App. 583, 611–14, 319 A.3d 123, cert. denied, 350 Conn. 905, 323 A.3d 344 (2024). "The test of disputation . . . must be applied to the parties at the time they entered into the alleged settlement. To hold otherwise would prevent any motion to enforce a settlement from ever being granted." (Internal quotation marks omitted.) *Meridian Partners, LLC* v. *Dragone Classic Motorcars, Inc.*, 171 Conn. App. 355, 364–65, 157 A.3d 87 (2017).

"When a party challenges the trial court's legal conclusion that the agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether [it finds] support in the facts set out in the memorandum of decision . . . . In addition, to the extent that the [party's] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 824, 277 A.3d 200 (2022).

We discern the plaintiff's principal claim as to the court's grant of the defendants' motions to enforce the settlement agreement to be that no agreement was reached because the draft settlement documents submitted by the defendants to the plaintiff following the June 14, 2023 PAC did not reflect material aspects of the agreement, such as the parties executing mutual releases. The plaintiff contends that (1) "[t]here was absolutely no meeting of the mind[s] *after* the opposing attorneys represented their proposed settlements [following the June 14, 2023 PAC], as such [she] called for an IMPASSE"; (emphasis added); and (2) the purported "[o]ne-sided" draft settlement documents "attempt[ed] to alter *the agreed-upon terms* [and] prompt[ed] [her to call] an IMPASSE since the proposed document[s] [did not] reflect their original understanding of the settlement." (Emphasis added.) The plaintiff's contention that there was no meeting of the minds *after* the parties entered into the settlement at the June 14, 2023 PAC

ignores the principle, as stated herein, that "[t]he test of disputation . . . must be applied to the parties at the time they entered into the alleged settlement." (Internal quotation marks omitted.) *Meridian Partners, LLC* v. *Dragone Classic Motorcars, Inc.*, supra, 171 Conn. App. 364–65. Therefore, any dispute as to purported deficiencies in the draft settlement documents is immaterial to the formation of the settlement agreement at the June 14, 2023 PAC, as found by the court.[20] Moreover, the plaintiff cites to no evidence to support her claim that releases beyond those found by the trial court were contemplated at the PAC, and the record in fact supports the court's related findings. In short, we reject the plaintiff's contention that the defendants' draft settlement documents circulated following the June 14, 2023 PAC undermined the formation of the settlement agreement, with the terms detailed by the court, at the June 14, 2023 PAC.

We briefly address two other cognizable claims that we distill from the plaintiff's appellate briefs, which are not models of clarity.[21] First, the plaintiff contends that,

---

[20] Insofar as the plaintiff is under the misapprehension that the court's decision required her to execute the draft settlement documents submitted by the defendants, we note that the court's decision did not direct the parties to execute any particular documents; rather, the court ordered the parties to consummate the settlement agreement per the terms found by the court, which included the execution of releases, ostensibly leaving it to the parties to cooperate in drafting and executing documents attendant to the agreement.

[21] Insofar as the plaintiff attempts to raise any other claims of error attendant to the grant of the defendants' motions to enforce the settlement agreement, we deem them to be abandoned as inadequately briefed. See *Long Manor Owners' Assn., Inc.* v. *Alungbe*, 218 Conn. App. 415, 422–23, 292 A.3d 85 ("Both this court and our Supreme Court repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relation-

following the June 14, 2023 PAC, "there was a proposed resolution, some of which the parties tentatively agreed upon, subject to opposing attorneys' further submission of proposed written settlement agreements for [her] review," but that "[n]o specific terms and conditions were agreed [to], nothing was in writing for confirmation, nothing was signed, no written term sheet or other written agreement was created at the end of the [June 14, 2023] PAC . . . and nothing was reported to any court to be placed on the record." To the extent that the plaintiff attempts to challenge the court's factual findings regarding the formation of the agreement, the evidence admitted into the record during the *Audubon* hearing supports the court's determination that the parties entered into a settlement agreement with specific terms. Moreover, "the fact that the settlement agreement was not reduced to writing or signed by the parties does not preclude it from binding the parties." *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 67, 978 A.2d 531 (2009).

Second, the plaintiff contends that the court (1) admitted exhibits into the record during the *Audubon* hearing "without foundation and testimon[y]" and (2) improperly entered into evidence her "copyrighted professional webpage . . . ." These claims are unavailing. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Edgewood Properties*, *LLC* v. *Dynamic Multimedia*, *LLC*, supra, 226

ship between the facts of the case and the law cited. . . . In addition, although we acknowledge that self-represented litigants are afforded some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citations omitted; internal quotation marks omitted.)), cert. denied, 348 Conn. 909, 303 A.3d 10 (2023); see also *Worth* v. *Picard*, 218 Conn. App. 549, 551 n.3, 292 A.3d 754 (2023).

Conn. App. 607. Prior to considering the admission of exhibits during the *Audubon* hearing, the court stated that, because the hearing was not a contested hearing and no exhibits were being admitted by agreement, the defendants would be required to lay a foundation for their proposed exhibits through testimony. The court proceeded to admit several exhibits offered by the defendants after proper foundations, through testimony, had been laid. Thus, the plaintiff's contention that the court admitted exhibits at the *Audubon* hearing "without foundation and testimon[y]" fails. Additionally, contrary to the plaintiff's second contention, her "copyrighted professional webpage" was not admitted into evidence; rather, the exhibit at issue—exhibit I—was marked as, and remained, an exhibit for identification only because the court determined that the defendants had failed to lay an appropriate foundation for its admission.

The judgment is affirmed.