******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GERARD KARLEN ET AL. *v.* HANY
SALEEB ET AL.
(AC 47573)

Alvord, Wilson and Sheldon, Js.

*Syllabus*

The plaintiff G appealed from the trial court's judgment, rendered following a hearing held pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.* (225 Conn. 804), granting the defendants' motion to enforce a settlement agreement that had been reached between the parties in the underlying action. G claimed that the court improperly determined that the parties had reached an enforceable settlement agreement. *Held*:

The trial court's conclusion that the parties had reached a legally enforceable settlement agreement was legally and logically correct, as that court's finding that G had agreed to the clear and unambiguous terms set forth in the settlement agreement was supported by the evidence in the record and, therefore, was not clearly erroneous.

Argued September 9, 2025—officially released March 31, 2026

*Procedural History*

Action to recover damages for, inter alia, negligent infliction of emotional distress, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Edward T. Krumeich II*, judge trial referee, granted the defendants' motion to enforce a settlement agreement and rendered judgment thereon, from which the named plaintiff appealed to this court. *Affirmed*.

*Gerard Karlen*, self-represented, the appellant (named plaintiff).

*Keith R. Ainsworth*, for the appellees (defendants).

*Opinion*

SHELDON, J. The self-represented plaintiff, Gerard Karlen,[1] appeals from the judgment of the trial court, rendered after a hearing pursuant to *Audubon Parking*

---

[1] Carla Karlen, who is married to Gerard Karlen, is also a plaintiff in the underlying action but is not a party to this appeal. We therefore refer in this opinion to Gerard Karlen as the plaintiff, to Gerard Karlen

*Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811–12, 626 A.2d 729 (1993) (*Audubon*),[2] upon the granting of a motion filed by the defendants, Hany Saleeb and Marianne Saleeb, to enforce a settlement agreement between themselves and the plaintiffs in the underlying action. On appeal, the plaintiff claims that the court improperly determined that the parties had entered into an enforceable settlement agreement. We affirm the judgment of the trial court.

The following facts and procedural history, obtained from our review of the record and the court's memorandum of decision, inform our review of the issues in this appeal. Since 1994, the plaintiffs have resided in a home located at 10 Pheasant Lane in Westport.[3] The defendants own abutting property located at 11 Pheasant Lane in Westport. In 2021, the plaintiffs brought the underlying action against the defendants, seeking damages on several theories of liability based upon allegations that, "beginning on or about 2013 and continuing to date," the defendants have "stalked and harassed" the plaintiffs and their family members in several ways. In their second revised complaint,[4] the plaintiffs alleged, more specifically, that one or both of the defendants had been

and Carla Karlen collectively as the plaintiffs, and to Carla Karlen individually by name where appropriate.

The plaintiff, by his own acknowledgment, is "a former attorney with many years of practice in New York State."

[2] "An *Audubon* hearing is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." (Internal quotation marks omitted.) *Bay Advance, LLC* v. *Halajian*, 236 Conn. App. 228, 230 n.2, 347 A.3d 1207 (2025); see also *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811–12.

[3] Carla Karlen is the alleged owner of the 10 Pheasant Lane property.

[4] When the plaintiffs filed their original complaint on November 4, 2021, they both were self-represented parties. On May 17, 2022, Attorney Josephine Smalls Miller filed an appearance for Carla Karlen, and on August 25, 2023, Miller filed the second revised complaint on Carla Karlen's behalf. On October 12, 2023, the plaintiff filed a statement adopting Carla Karlen's second revised complaint. Although the statement did not restate the text of Carla Karlen's second revised complaint, the parties and the court later treated Carla Karlen's second revised complaint as the operative pleading of both plaintiffs.

surveilling them, blocking their driveway, interfering with and disparaging them to contractors and delivery persons who came into their neighborhood, and disrupting their utility services. The plaintiffs further alleged that the defendants and their guests had trespassed on their property. On February 1, 2024, the court, *Hon. Edward T. Krumeich II,* judge trial referee, granted in part the defendants' motion to strike all counts of the plaintiffs' second revised complaint in the underlying action, as filed by Carla Karlen and later adopted by the plaintiff; see footnote 4 of this opinion; leaving pending only those counts pleading claims of negligent infliction of emotional distress and defamation.

On February 27, 2024, the defendants filed a motion to enforce a settlement agreement that allegedly had been reached between the parties in the underlying action. In that motion, the defendants alleged as follows. During a February 7, 2024 trial management conference before Judge Krumeich in Stamford, the parties "developed a conceptual model for a settlement of two pending cases" between the parties, namely, the underlying action, which was then pending in Stamford, and an "ancillary case" brought by the defendants against the plaintiffs in the judicial district of Fairfield, which was then pending in Bridgeport (Bridgeport action).[5] Although a proposed "written agreement on specific settlement terms which included both cases" had been drafted following the February 7 conference, the parties ultimately determined that they would not be able to settle the Bridgeport action. For that reason, the plaintiffs offered to settle the underlying "Stamford case on its own," whereupon the proposed written agreement to settle both cases was modified "by both parties until a final settlement agreement was reached." Thereafter, during a follow-up status conference in the Bridgeport action on February 23, 2024, in which the parties had agreed to report to

[5]The Bridgeport action related to the plaintiffs' construction of a wall that the defendants claimed impairs their right of way to a cul-de-sac near their property. The defendants sought, in the Bridgeport action, to have the plaintiffs remove the wall.

the court on the progress of their settlement negotiations in the two cases, the parties informed the court, *Hon. Kenneth B. Povodator,* judge trial referee, "that, while the parties had agreed to settle the Stamford case, the Bridgeport case would need to be tried. The court polled both plaintiffs who agreed that this was an accurate report of the status." On that basis, the defendants alleged in their motion to enforce settlement agreement that the underlying action had been "reported to the court as settled."

The defendants attached to their motion to enforce settlement agreement two exhibits: (1) a document entitled "Mutual Release and Settlement Agreement," which each defendant had signed on February 25, 2024;[6] and (2) copies of emails that had been exchanged between counsel for the defendants, Keith R. Ainsworth, and counsel for Carla Karlen, Josephine Smalls Miller; see footnote 4 of this opinion; with electronic copies to the plaintiff, that documented the parties' settlement discussions that led up to the final drafting of the "Mutual Release and Settlement Agreement," in redline, prior to the February 23, 2024 status conference.

On March 11, 2024, the plaintiff filed an objection to the defendants' motion to enforce settlement agreement, in which he asserted that he had never agreed to settle the underlying action without also settling the Bridgeport action. He claimed in the objection that he had always "understood that [the parties] were working towards a global settlement of all matters at issue in both cases and that the settlement of both actions was the condition precedent to the settlement of each such action." Therefore, although the plaintiff acknowledged that, during the February 23, 2024 status conference, Ainsworth had in fact "summarized where the parties were," he disputed as "not . . . accurate" the defendants' allegations that Ainsworth had advised Judge Povodator

---

[6] The word "DRAFT" is imprinted at the very top of page 1 of the "Mutual Release and Settlement Agreement" and also on page 4, obscuring the defendants' signatures.

that "the parties had agreed to settle the Stamford case but that the Bridgeport action would need to be tried," and that the court had "polled both plaintiffs" thereafter, and they had both agreed with Ainsworth's representations. The plaintiff contended that any statements made to Judge Povodator during the status conference were merely "summaries of the attempts of the parties to reach a global settlement so that all disputes were settled" and that "[n]either of the plaintiffs believed that the sine [qua] non of a global settlement had been reached. Accordingly, the conditions upon which the settlement in this action was based had not occurred."

Thereafter, on March 18, 2024, the defendants filed an answer and special defenses to the second revised complaint and a "motion for judgment on [the] stricken counts" of the second revised complaint, which the plaintiffs had not repleaded, "in order to close the pleadings" in advance of the April 2, 2024 trial date then scheduled in the underlying action. The plaintiffs did not oppose that motion.

On April 1, 2024, while the motion for judgment was still pending, Judge Krumeich held an *Audubon* hearing "to determine whether the parties reached an enforceable settlement agreement on February 23, 2024." See footnote 2 of this opinion. Both plaintiffs and Ainsworth testified at the hearing, and three exhibits were admitted into evidence: (1) a copy of the "Mutual Release and Settlement Agreement" that each defendant had signed on February 25, 2024, which had been attached to the motion to enforce settlement agreement; (2) copies of the emails exchanged between Ainsworth and Miller, with copies to the plaintiff, that also had been attached to the motion to enforce settlement agreement; and (3) the entire transcript of the February 23, 2024 status conference before Judge Povodator.

On April 2, 2024, upon reviewing the documentary evidence submitted at the *Audubon* hearing, "including the transcript of the status conference in which the settlement was reported, and after assessing the credibility of

the testimony presented [at the hearing] by the witnesses, the court conclude[d] [that] an enforceable settlement agreement was reached by the parties as of the status conference held [on February 23, 2024] before Judge Povodator on another case between the same parties in Bridgeport." It therefore issued an order granting the motion to enforce settlement agreement in the underlying action. In that order, the court explained that "Judge Povodator had attempted to mediate a global settlement" during a conference held earlier in the month and that "the status conference on February 23, 2024, was for the parties to report the progress of the negotiations." In that follow-up status conference, the court stated, "counsel and the [plaintiff] reported the Stamford case had been settled. A draft settlement agreement had been circulated and agreed upon before the conference and only a minor modification agreed to by all was made after the conference." As for plaintiff Gerard Karlen, in particular, the court found that he "was privy to the negotiation and the circulated agreement, and he affirmed the statement by [Ainsworth] to Judge [Povodator] that '. . . we have a resolution to the Stamford case. . . . We have come to a final agreement. . . . We were going back on some very minor language in the Stamford case.'" The court therefore "found not credible the testimony of [the plaintiffs] that they did not review and accept the terms of the 'finalized' agreement signed by the [defendants] and would not agree to settle the Stamford action without settlement of the Bridgeport action."

The court ultimately determined that the "Mutual Release and Settlement Agreement" attached to the motion to enforce settlement agreement, which it described as "[t]he written draft agreement signed by the [defendants] but not by the [plaintiffs] and delivered to [Miller] and to [the plaintiff] contained the terms and conditions agreed to by the parties, is clear and unambiguous and therefore [ordered that that agreement be] summarily enforced under the principles announced in [*Audubon*]." This appeal by the plaintiff followed. See

footnote 1 of this opinion. Additional facts and procedural history will be set forth as necessary.

We begin by stating the relevant standard of review and legal principles that govern our review. "In *Audubon*, our Supreme Court shaped a procedure by which a trial court could summarily enforce a settlement agreement to settle litigation. *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.,* supra, 225 Conn. 812. The court held that a trial court may summarily enforce a settlement agreement *within the framework of the original lawsuit* as a matter of law when the parties do not dispute the terms of the agreement. . . . Id.

"In coming to this conclusion, the court in *Audubon* relied on federal precedent, specifically that [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial *or other significant courtroom proceedings*." (Emphasis in original; internal quotation marks omitted.) *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 815, 277 A.3d 200 (2022). For the purpose of this rule, significant courtroom proceedings other than a trial in the underlying action at which a court is empowered to render judgment to enforce a settlement agreement presented to it by the parties to that action have been held to include both pretrial conferences in the action; see, e.g., *McCook* v. *Whitebirch Construction, LLC,* 117 Conn. App. 320, 323, 330, 978 A.2d 1150 (2009) (settlement agreement was properly enforced where, "[a]t the conclusion of [a second pretrial] conference, counsel for [the parties] reported to the court . . . that a global settlement agreement had been reached in all three cases . . . [and] followed up with a letter memorializing the agreement" (footnote

omitted)), cert. denied, 294 Conn. 932, 987 A.2d 1029 (2010); and posttrial settlement conferences while an appeal in that action is still pending. See, e.g., *Worth* v. *Picard,* 233 Conn. App. 38, 42–47, 338 A.3d 1195 (2025) (settlement agreement arrived at during appellate preargument conferences was properly enforced by another judge after *Audubon* hearing).

The critical question the trial court must answer when ruling on a motion to enforce a settlement agreement reported to it at any stage of the proceedings before it in an underlying action is whether the terms of agreement to which all parties agree are clear and unambiguous. See *Kinity* v. *US Bancorp*, supra, 212 Conn. App. 816 ("[g]enerally, [a] trial court has the inherent power to enforce summarily a settlement agreement as matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement" (internal quotation marks omitted)). To make this determination, the court is empowered to make factual findings as to any disputes arising in connection with the motion because, as our Supreme Court explained in *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 535, 4 A.3d 288 (2010), a motion to enforce a settlement agreement is equitable in nature, and, thus, a court may "use its equitable powers to resolve [any such factual] dispute[s] without a jury."

As this court has stated previously, "[a] settlement agreement is a contract among the parties. . . . In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties . . . . The mutual understanding must manifest itself by a mutual assent between the parties. . . . In other words, [i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met." (Internal quotation marks omitted.) *Bay Advance, LLC* v. *Halajian*, 236 Conn. App. 228, 235, 347 A.3d 1207 (2025). "Furthermore, [p]arties are bound

to the terms of a contract even though it is not signed if their assent is otherwise indicated. . . .

"When a party challenges the trial court's legal conclusion that the agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether [it finds] support in the facts set out in the memorandum of decision . . . . In addition, to the extent that the [party's] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 235–36.

In support of his claim that the court improperly enforced the settlement agreement, the plaintiff argues that several of the factual findings upon which the court based its decision to do so were clearly erroneous. He claims, more particularly, that the court "incorrectly determined" that (1) the attorneys and he reported to Judge Povodator that the underlying action had been settled; (2) a draft settlement agreement had been circulated and agreed upon before the February 23, 2024 status conference and that only a minor modification, that had been "agreed to by all," was made thereafter; (3) the written "Mutual Release and Settlement Agreement" that the defendants signed on February 25, 2024 "reflected the parties' agreement on the terms and conditions agreed to before the status conference as well as the 'minor terms' finalized shortly thereafter," and that it "contained the terms and conditions agreed to . . . and is clear and unambiguous"; (4) the plaintiffs' testimony was not credible; and (5) "there was 'a meeting of the minds' and all material terms and conditions were agreed to by the parties," and thus the "Mutual Release and

Settlement Agreement" did not have to be signed by the plaintiffs to be enforceable against them as a matter of law.[7] The plaintiff maintains, to the contrary, that there existed a "dual settlement contingency," namely, "that the settlement of each individual action was required for the settlement of both actions, and that neither action would be deemed settled unless settlement of the other action occurred." Because this alleged "dual settlement contingency" had not been satisfied, the plaintiff argues that a separate settlement of the underlying action was impossible and that the court "was incorrect in finding that an enforceable stipulation [as to the underlying action alone] had been entered into between the parties . . . ." We disagree.

The following additional facts and procedural history, which are supported by the testimony given and the exhibits admitted into evidence at the *Audubon* hearing, are relevant to our resolution of the plaintiff's claim. At the beginning of the February 23, 2024 status conference, Judge Povodator explained that "[t]his is a follow-up to a session we had . . . [on February] 16th . . . exactly a week ago; and there were some discussions about possible ways to make everybody not too unhappy while resolving this case. . . . And so, my question is whether there's been any further progress in that regard . . . ." Ainsworth spoke first, on behalf of the defendants, who were the plaintiffs in the Bridgeport action, and the following colloquy between counsel, the plaintiff, and the court ensued:

"[Ainsworth]: Thank you, Your Honor. Okay. So, we have had additional communications on a settlement, and we actually made some progress. I believe we actually have a resolution—we have good news and bad news.

_____
[7] We note that Carla Karlen, through counsel, did file an objection to the motion to enforce settlement agreement on April 1, 2024, just prior to the *Audubon* hearing. As stated previously in this opinion, however, Carla Karlen is not a party to this appeal. See footnote 1 of this opinion. Thus, although some of the plaintiff's arguments refer to "the plaintiffs" collectively, we consider those claims only as to the plaintiff personally.

We have a resolution to the Stamford case but not the Bridgeport case.

"The Court: Okay.

"[Ainsworth]: And we just this afternoon sort of—I think came to a final draft, and I'll let Attorney Miller sort of confirm that. We were going back on some very minor language in the settlement agreement for the Stamford case. The Bridgeport case we ran into an impediment to settlement where the parties just disagree on the possibility for a compromise.

"The Court: All right. Anything from the defense side, first Ms. Miller?

"[Miller]: I would say that that is an accurate assessment of where we are. We're just at an impasse with regard to a central issue in [the Bridgeport action], and that is the existence of the wall. My client is not in agreement with taking down the wall, and we have not heard any real counters from the plaintiffs . . . . But I think we're at an impasse in this particular case.

"The Court: Mr. Karlen . . . I want to make sure you have an opportunity to say I agree, disagree, whatever.

"[The Plaintiff]: . . . Yes. . . . That is exactly where we are."

Following the initial conference with Judge Povodator on February 16, 2024, there had been an exchange of several emails by and between Ainsworth and Miller, with electronic copies to the plaintiff, which led to an agreement to settle only the underlying action and made clear that that separate agreement would be reported to the court at the follow-up status conference on February 23, 2024. Specifically, on February 19, 2024, Ainsworth sent an email to Miller and the plaintiff, stating: "Attached is the settlement agreement including the list of items the [defendants] should refrain from with some edits." Miller responded by sending a reply email to Ainsworth, with a copy to the plaintiff, in which she stated: "It would have made review easier if you had done this in

revision marking mode so that I could more readily see your changes. With that said, on behalf of my client [Carla Karlen], she WILL NOT AGREE to any removal of any portion of the wall. We will therefore consider a nonglobal settlement if your clients [insist] upon that. We will need to treat the [two] cases separately as we continue to believe that your client's position regarding the wall/fence case is not a reasonable compromise." (Emphasis in original.)

Thereafter, on February 23, 2024, at 9:01 a.m., prior to the follow-up status conference, Miller sent an email with an attachment to Ainsworth and the plaintiff bearing the subject line "KARLEN V SALEEB—SETTLEMENT AGREEEMNT RE-DRAFT." In the email, she wrote: "Attorney Ainsworth, *here is what I believe should be our last edits to the settlement agreement on the Stamford case only*. Let me know if your clients agree. It is [in] revision marking mode to facilitate [any] last edits from your client." (Emphasis added.) Ainsworth responded at 11:30 a.m., in a reply email addressed to "Atty Miller and Mr. Karlen," stating: "I discussed it with my clients and made two clarifications, the only one of real substance being that the release does not include the pending Bridgeport case. If this works, we should finalize and be able to report it at the status conference." At 12:54 p.m., Miller, in turn, sent a reply email to Ainsworth, with an electronic copy to the plaintiff, stating: "One further edit is required that was missed. That is, we are NOT agreeing to withdraw counterclaims in the Bridgeport action, to the extent of those remaining." (Emphasis in original.) Ainsworth responded at 1:06 p.m., in a reply email sent to Miller and the plaintiff, that he had "made the edit in redline."

Later that afternoon, at 4:01 p.m., following the status conference with Judge Povodator at which the settlement of the underlying action was reported,[8] Ainsworth sent a further email to Miller, with an electronic copy to

[8]The record reflects that the status conference started at 3 p.m. and concluded before the court proceeded with "another matter at 3:30" p.m.

the plaintiff, to which he attached a document entitled "Settlement Agreement 02-23-24 (clean).docx." In that email, Ainsworth wrote: "Here is the clean version of the last redline with all changes accepted. If each party signs, we can exchange the signed versions and report the matter to the [Stamford] JD and terminate the action." Miller responded by email on February 25, 2024, at 9:47 a.m., stating: "I have finalized the document and forwarded to my client for final signature. Counterpart signatures should be acceptable." At 10:28 a.m. that morning, Ainsworth sent a responsive email to Miller, with an electronic copy to the plaintiff, stating: "Same on this end. I will email a pdf which is to be held in escrow until all parties have signed. We should notify the court as soon as the signatures have been made." By a reply email to Ainsworth with a copy to the plaintiff, Miller responded: "OK. Thanks."

On February 26, 2024, according to the motion to enforce settlement agreement, Miller sent another email, presumably to Ainsworth and the plaintiff, stating: "I have been informed a short while ago that my client [Carla Karlen] has decided not to settle on these terms. Without agreement to resolve the fence issue, there is no reason to think there will be good faith compliance by your clients."[9] The defendants filed the motion to enforce settlement agreement the following day.

During the *Audubon* hearing, Ainsworth testified that the parties initially had been "discussing a global settlement of both actions" but "[t]hat process failed. In other words, the parties agreed to settle one case, the Stamford case, but not the Bridgeport case because we came to an impasse on the material terms of how it would be settled." He further identified the "Mutual Release and Settlement Agreement" signed by the defendants on February 25, 2024, and testified that it is "the settlement agreement in this matter." He explained

[9] Although it does not appear that the actual February 26, 2024 email was made part of the record, the propriety of the defendants' representation in this regard has not been challenged on appeal.

that the document Miller had finalized and forwarded to her client for final signature, per her 9:47 a.m. email on February 25, 2024, was the version the defendants had signed and that he had put a draft sticker over their signatures and transmitted the settlement agreement to the plaintiff and Miller thereafter.[10] The "Mutual Release and Settlement Agreement" was admitted into evidence without objection.

According to that agreement, the plaintiffs were to withdraw the underlying action in exchange for the defendants' agreement to refrain from certain actions that were delineated and described in eleven separately numbered paragraphs set forth therein. Moreover, there was to be a mutual release by and among the parties that expressly did not apply to the Bridgeport action.

We conclude that this evidentiary backdrop provides support for each factual finding about which the plaintiff complains, thereby defeating his arguments that any of the challenged findings are clearly erroneous.[11] See *Bay Advance, LLC* v. *Halajian*, supra, 236 Conn. App. 236. Indeed, the transcript from the February 23, 2024 status conference plainly reveals that (1) Ainsworth advised Judge Povodator that "[w]e have a resolution to the Stamford case but not the Bridgeport case," "we just . . . came to a final draft" and "were going back on some very minor language in the settlement agreement for

---

[10] Ainsworth testified that he utilized the draft stamp in an abundance of caution because, "[w]ith an unrepresented party, I didn't feel comfortable giving the document in escrow. What I wanted to show is my clients have signed, we're ready to go."

[11] In reaching this conclusion, we limit our consideration to the five challenged findings we listed previously in this opinion. That list derives from the seven allegedly incorrect determinations by the court that the plaintiff identifies at the beginning of the argument section of his appellate brief. To the extent the plaintiff argues in his brief that Miller did not have apparent authority to act on his behalf, and did not so act, we note that the court made no findings on those claims. With respect to the portion of the plaintiff's argument section of his brief that bears the title "No Escrow," it is inadequately briefed. Accordingly, we deem that claim to be abandoned and do not reach its merits. See, e.g., *Worth* v. *Picard,* supra, 233 Conn. App. 41–42 n.7.

the Stamford case"; (2) Miller agreed with Ainsworth; and (3) when Judge Povodator gave him the "opportunity to say I agree [or] disagree" with what Ainsworth had represented and Miller had confirmed, the plaintiff stated unequivocally, on his own behalf: "Yes. . . . That is exactly where we are." This evidence directly supports the court's finding that "[t]he counsel and pro se party reported the Stamford case had been settled."[12]

Although the plaintiff testified at the *Audubon* hearing that, when he made this statement to Judge Povodator, he meant only that "the basis of an agreement was reached in Stamford, but not in Bridgeport," that he "never intended to settle the Stamford case without a settlement of the Bridgeport case," and that he did not see the emails and "latest drafts of the documents that were going back and forth" before or immediately after the

[12]Throughout his brief to this court, the plaintiff perseverates on the fact that the "statements" regarding settlement were made "in a status conference in a different case" and suggests that, because of this, they were improperly relied on by the court to assess whether there had been a reported settlement of the underlying action. As previously noted in this opinion, however, "[a] court's authority to enforce a settlement by entry of judgment . . . is especially clear where the settlement is reported to the court during the course of a trial *or other significant courtroom proceedings*"; (emphasis in original; internal quotation marks omitted) *Kinity* v. *US Bancorp*, supra, 212 Conn. App. 815; and a status conference is a significant courtroom proceeding in which an enforceable report of settlement can be made. See, e.g., *McCook* v. *Whitebirch Construction, LLC,* supra,117 Conn. App. 323, 330. The fact that the status conference in which the settlement of the underlying action was reported occurred in a related proceeding by and among the same parties does not change this conclusion, particularly where the discussions at that conference involved the facts and circumstances of, and reported extensive attempts to settle, both actions. See, e.g., *Ackerman v. Sobol Family Partnership, LLP,* supra, 298 Conn. 499–507, 530 (settlement agreement, arrived at following court-ordered mediation sessions before neutral and detached judge and discussions among parties thereafter, was properly enforced by another judge after *Audubon* hearing). Indeed, even though the settlement of the underlying action was reported in a status conference held in the related proceeding, the agreement itself was enforced "within the framework of the original lawsuit," as contemplated by our Supreme Court in *Audubon. Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 812.

status conference at which the settlement was reported, the court found that this testimony was "not credible . . . ." Indeed, the court expressly rejected the plaintiff's testimony that he "did not review and accept the terms of the 'finalized' agreement signed by the [defendants] and would not agree to settle the Stamford action without settlement of the Bridgeport action" but found, to the contrary, that "[t]he signed draft reflected the parties' agreement on the terms and conditions agreed to before the status conference . . . ."

"[N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . That determination of credibility is a function of the trial court." (Citations omitted; internal quotation marks omitted.) *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 333, 764 A.2d 199 (2001). It is well settled that " '[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review' "; *Connecticut Fine Wine & Spirits, LLC* v. *Dept. of Consumer Protection, Liquor Control Commission,* 237 Conn. App. 1, 14, A.3d (2025); and we defer to the court's credibility determinations and findings made in relation thereto. See, e.g., id., 15.

Finally, the court found that the settlement agreement to which the plaintiff agreed[13] was "clear and

---

[13] Although the plaintiff did not sign the settlement agreement, it is well settled in Connecticut that "[p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated." (Internal quotation marks omitted.) *Bay Advance, LLC* v. *Halajian*, supra, 236 Conn. App. 235. In the present case, there is evidence in the record that (1) the plaintiff agreed with Ainsworth's report to Judge Povodator that the underlying action had been settled, separate and apart from the Bridgeport action, and that a final draft of the terms reflecting the settlement of the underlying action had been agreed on prior to the conference with only an agreed on change that had been made in redline left to be accepted, and (2) the agreement to settle the underlying action, which the defendants signed and the plaintiff received following the conference, "reflected the parties' agreement

unambiguous . . . .” See *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.,* supra, 225 Conn. 811 (“[a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous”). Although the plaintiff contends that the court incorrectly determined that “[t]he written draft agreement signed by the [defendants] but not by the [plaintiffs] and delivered to counsel for Carla Karlen and to Gerard Karlen contained the terms and conditions agreed to by the parties and is clear and unambiguous,” and maintains that there was “[n]o [a]greement that [m]eets [the *Audubon*] [s]tandards,” he presents no argument in support of these assertions that the settlement agreement the court enforced is not clear and unambiguous. Thus, we deem any such claim in this regard to be abandoned as inadequately briefed.[14] See, e.g., *Worth* v. *Picard,* supra, 233 Conn. App. 41–42 n.7.

For these reasons, we conclude that the court’s finding that the plaintiff agreed to the clear and unambiguous terms set forth in the “Mutual Release and Settlement

on the terms and conditions agreed to before the status conference” as the court found. In other words, when the plaintiff confirmed that the representations Ainsworth had made to Judge Povodator regarding the separate settlement of the underlying action were true, he knew what the terms of the settlement were and he was manifesting his assent thereto. See *Bay Advance, LLC* v. *Halajian*, supra, 235. As such, there is evidence to support the court’s finding that there had been a “ ‘meeting of the minds’ ” by that point and the court’s conclusion that the written “agreement need not be signed [by the plaintiff] to be enforceable” against him is therefore legally and logically correct. See id., 235–36.

[14] We note, nonetheless, that the “Mutual Release and Settlement Agreement” unambiguously established that the plaintiffs were to withdraw the underlying action in exchange for the defendants’ agreement to refrain from certain actions that were delineated and described in eleven separately numbered paragraphs therein. See *SMDV 1, LLC* v. *459-461 Pacific Street, LLC*, 233 Conn. App. 599, 609, 341 A.3d 304 (“[W]e accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . [If] the language is unambiguous, we must give the contract effect according to its terms.” (Internal quotation marks omitted.)), cert. denied, 353 Conn. 919, 345 A.3d 808 (2025).

Agreement" was not clearly erroneous and that the court's conclusion that the parties had reached a legally enforceable settlement agreement, which it enforced, was legally and logically correct.

The judgment is affirmed.

In this opinion the other judges concurred.